I just thought I'd suggest to both of you that we'll assume that the language that you agree should be stricken can be off the table for purposes of our discussion this morning.  Thank you, Your Honor. I'm Elizabeth Newman representing Mr. Goddard, and in light of what the Court has just said, and particularly also in light of the Court's decision in Stottero, I'd like to focus on the computer conditions today here. Your Honor, the particular focus on the computer conditions to which I'd like to direct the Court, if I may, is the second of the two statutory tests that must be met if a condition of supervised release is to be upheld, and that is that the condition embody no greater a deprivation of liberty than is reasonably necessary to achieve the goals of supervision. May I just ask you a question? You've argued with respect to Condition 6, which imposes the obligation to get approval of probation office before making software modifications. Yes. And that's just too broad. And you have construed Condition 7 to prohibit all computer use except for work. Yes. Okay. Here's what I'd like to hear from you on, if you will. It seems to me that Condition 6, to the extent it does require approval of probation office for any software change, is kind of unworkable, because once you access a computer, it just changes itself all the time. So my thought was that properly construed, that condition would simply exclude routine software updates from service providers and extend only to modifications initiated by Goddard to preapproved programs. Would that be an acceptable construction? Let me make sure I understand that it would, it would, that Condition 6 would be limited to upgrades or changes or substitutions or additions made specifically by Mr. Goddard. To preapproved programs. In other words, what it would do is, is exclude the kind of automatic routine software updates that come from service providers and that you don't even know are going on, but they're just going on. Well, I think it would help. But I don't think that it completely solves the problem, Your Honor. If I may direct the Court to the Court's decision in the Salas case, which also involved something analogous to Condition 6, a very broad search and seizure monitoring upgrade prohibition sort of condition, and as well as the submission of all billing records. The Court's focus in Salas was on the imprecision in the kind of monitoring software that would be installed and the degree to which the monitoring software would really monitor. As the Court pointed out, there's a great range of monitoring software available on the market, which is more or less intrusive from, you know. Why isn't that something that if you've got a problem with it, as it happens, you just go into the Court and say, we've got a problem with this? I mean, I don't know how in the world we can deal with a particular kind of monitoring program. Well, I understand the Court's concern, and I do think it's one of the sort of existential puzzles when the appellate court is dealing with supervised release conditions. Well, I'm just trying to help you. And I appreciate that. I've offered a construction that seems to me to be sensible. I do appreciate that. The Court in Salas, however, did remand for greater determination of precision by the district. And I don't see any point in doing that if the limited construction that I'm suggesting would help eliminate an unworkable situation. I agree with the Court that it would help to eliminate an unworkable situation. And I certainly don't want to reject the Court's helpful impulse in this case. Okay. Well, let me try to help you on another one and see if that works any better. Okay. Condition 7. Yes. You interpret as being a prohibition on all non-work-related use of a computer. Yes. And it strikes me that that would be problematic. Yes. However, it also seems to me that sensibly read in the context of the whole supervised release structure, that it means at work, Goddard shall not use computers — excuse me, he shall use computers only within the scope of employment. And if you construed it that way, would that be an acceptable limitation? Well, I think it would certainly help a great deal to make Condition 7, if you look at it alone, a more — Look, I understand you don't want any restrictions. Oh, no, Your Honor. I understand that. And you particularly don't want this cohort of restrictions. But sort of part of my reason for asking this is if I think, which I do, but never mind. I don't know what my colleagues think. But assuming I think that there's nothing really radically wrong with the cohort or with the notion of restrictions, what I am trying to find out from you is if those two modifications would at least be an acceptable construction. I'm going to ask the same thing of the government, because I don't see the point in bothering to go back to the district court if those — if we can make our own construction. Well, Your Honor, I think that it certainly — if that's the way the condition is sort of rewritten to read, that as long as he's at work, he may use his work devices only for work purposes. I think that that helps. I think that that helps a great deal. But I would like to point out that the court, according to its most recent iteration in Cope, according to Salas, is not allowed to presume that a condition will be interpreted or read any particular way. And let me make it very, very clear, if I were writing this, that that's the way the — I've done this a bunch of times in some of these other cases, and they say, construed this way, there's — the condition is not problematic. All right. And that's what the condition means. It means at work, he can only use his computer for work purposes. That is within the scope of his employment, and he can't go pawing around on the Internet for child pornography while he's at work on an approved use of a computer. No, I do agree that that would be very helpful. My larger point, I guess, and maybe this is just beating a dead horse for the Court's concern, is that if it's the conduct that's supposed to be targeted here, and it is conduct. It's no acquisition of child pornography, no inappropriate contact with children. Then the — the restriction on instrumentalities is a little bit blunt. And if the statutory test is the least deprivation of liberty, reasonably consistent with prohibiting the conduct and achieving the goals of supervision, rehabilitation, public protection, and deterrence, then the — the restriction that's most consistent with that goal, with that — Counsel, I can't tell what you want. I can't tell whether what you want is the word reverse at the bottom of the opinion. And vacate at the bottom of the opinion, so that the district judge and the probation officer have another go around in the courtroom and do this again. Or whether you want an affirmed at the bottom of the opinion, except for a direction to rewrite, to strike all the things that were not in the oral sentencing. And an instruction from us that construes these conditions in a less restrictive way. It sounds like you'd rather have a reverse and do-over with the same probation officer and same judge, instead of us narrowing it down and saying, here's what the deal is. I would simply — I would certainly appreciate a narrow down and saying, here's what the deal is. But I think the deal is that the — the conditions have to be as least — as least restrictive as possible. Right. Exactly. But then — I would — I could actually make a fairly persuasive argument that somebody who not only has used child — accesses the Internet for child pornography, but has acted on it — Yes. — could well stand even greater restriction. Yes. I just don't see how you — That it's a monitoring and a supervision and a let him use the computers under supervision. That that's — I mean, I think, Judge Kleinfeld, I certainly don't want to be unclear. And I'm sorry that it seems to be coming across that way. But I think that the least — the least restrictive — We know the principle. Everybody knows the principle.  The application principle that I think is the most appropriate is let him use the computers under monitoring, but not such broad monitoring as conditions of survival. I don't understand that either. One of the things I was trying to figure out when I read 7 is, can he go to Kinko's and prepare a resume to apply for a job? And I was reading 7, the easiest reading, to say, no, he can't. That's how I read it, too. But then Judge Reimer came up with a very clever reading that said, yes, he can, because even though he's not using it only within the scope of his employment, since he's not at work and doesn't have a job yet, nevertheless, the second sentence there only restricts the use of the computer while at employment. So he can go to Kinko's and do a resume. But now I'm understanding you to mean, don't say that in the opinion. Just reverse — just vacate and send it back. And I can't figure out whether that's what you mean. Well, it is what I mean, because I think that — Which is what you mean? To reverse it and send it back, because I think that when you look at all these conditions together, in the principle that we're all familiar with, that the least restrictive way of targeting his conduct or pretend — Probably the greatest way to get a more restrictive set of conditions is to send it back and give the district court the opportunity of correcting her inadvertent error of not conforming the written judgment to the oral one. So then you're going to get back conditions 8, 15, 17, 12, and 19. Not if the court sends it back only as to 5 through 7. Well, yeah, but Judge Kleinfeld says if you're going to get a reversal, you're going to get a reversal and a resentencing. I think that the computer conditions are really the most troubling here. I really do, Your Honor. Okay. All right. Thank you very much, Your Honor. Yes, sounds good. Thank you. Ms. Corbett. Good morning. May it please the Court, Assistant United States Attorney Jennifer Corbett, on behalf of the government in this matter. Counsel, I have a couple of questions. Yes, Your Honor. First of all, as I understand it, some of these fairly extreme conditions like the penile plethysmograph and the ABLE testing and such, they're out by stipulation now, right? Yes, that's true. Those are taken care of. Now, on the computer, the way I understood 7 until Judge Reimer came up with her more subtle understanding was he couldn't go to Kinko's and prepare a resume. Is that what 7 means? It could be read that way. But I think in light of Judge Reimer's interpretation, it is preferable in this case and warranted to not reverse. Should we decide the case on the basis of whether it's okay to tell him he can't go to Kinko's to prepare a resume? That's not needed in this case. On the facts of this case — There's no way he's going to get the probation officer to leave his office and come over to Kinko's with him. That would be unworkable. There is a problematic aspect, as Judge Reimer pointed out. So it's okay with you. You have no problem with reading it to mean it's okay to use a computer for non-work purposes. I think that's a very reasonable and preferable interpretation as opposed to reversing and sending back to the district court. I was also thinking about what the word computer meant. It includes, well, just about everybody's cell phone is a computer now. ATM machine, get money out of the bank, that's a computer. I don't know how, since virtually everybody in every field of commerce substitutes computers for personnel to the extent they can in order to be more productive, I don't know how you can live without going to a third world country. And I think if we were dealing with an absolute ban, where the condition was you shall not use computers or any device that can access the internet during your term of supervised release, period, that would be a far different condition than the one we're looking at. We're looking at a condition that's not for a lifetime, it's for a period certain. So you think it's okay to say no cell phones for the period of supervision? That's not what this condition says, and in the context of this case, the condition as it's written — Well, a cell phone is a computer. It has a computer chip in it. It does — even the simplest ones that don't access the internet are still computers. They do calendaring and computation and play games and all that sort of thing. The way the condition is written, if we're talking about 7 and computer devices, they do restrict use of devices that would include cell phones that have internet access. So are you claiming — I didn't remember that it said internet access. It says no access to a computer. Are you saying he can use a cell phone or not? Before you answer the question, may I ask my colleague to clarify what he's asking so we understand the record's clear? Are you asking as I construed it, or are you asking it as written? Just so we — The way I understood it as written, he cannot use a cell phone because a cell phone is a computer. As Judge Reimer reads it, I think he could use a cell phone. But I want to know what you think is the proper way to construe it. I think it can be interpreted either way. However, the question — and I think part of Judge Reimer's concern is the constantly evolving nature of the computer technology. Without knowing the particular device that's involved, without knowing the particular situation that he's using it for, because again, even broadly construed, this condition would still allow computer use if it was within the scope of employment. You came up with the idea in your first answer to my question that he could use a computer so long as it did not give internet access. 7 doesn't say that. Oh, within the scope of employment. It's not an absolute ban. 7 at any rate is still going to allow — construed either way is going to allow computer use within the scope of employment. So there are additional facts that you would need to know as opposed to just saying you can't use a cell phone, because that's not what 7 says. I was wondering if he could use it out of the scope, like carrying a cell phone in his shirt pocket so that he can dial 911 and say, this is my sexual deviance. I think clearly the way that Judge Reimer has construed it, that would not be a problem, and that may be one way to address the concerns. Is that a legitimate concern, that he can use his cell phone? Oh, it certainly is a legitimate construction, and it would be clearly warranted in this case, given the facts of this particular offender, of this recidivist sex offender, and his use of the internet to commit the offense. I don't know if I answered — Now, what about a cell phone that does access the internet? Is that prohibited, for him to have a personal cell phone that accesses the internet under 7? It would depend on the purpose. As 7 is written in either construction, again, it depends on the purpose of the computer use, because as it is — Are you saying he could use it at work, but not at home? If he were using it within the scope of employment, we would need to know what the use was for. So it's a little bit — Wait a second. We've got — we're talking about 7, and there are other conditions which also apply to use of computer and telephone devices. So as I understand it, condition 5 applies to the use of computer-related devices, including cell phones with internet access, but it allows that use upon approval of the probation officer. So my construction simply makes it perfectly clear that he can have personal use of a computer and a cell phone with access to the internet so long as the probation officer approves it outside of work. And within work, he has basically any use as long as it's within the scope of his employment. I think that is a construction that would achieve the purposes of supervised release and would really preserve the judicial economy in interpreting the conditions in such a way that the judge was not abusing her discretion and that would be workable to be implemented during the term of supervised release. And I think construing it that way resolves many of the concerns that are raised by the defendant, and it resolves the way to achieve the goals of supervised release, but yet not putting a greater restriction than necessary. And I would just, in passing, note that the importation of least restrictive means jurisprudence into a supervised release context is problematic and, frankly, is not warranted. Really, least restrictive means as a test is out of place applied to supervised release. In terms of the application of least restrictive means, that's an application that is applied to the statute that is passed by government and is then applied to the general public. In the context of supervised release conditions, however, we're talking about someone who's a convicted offender, in this case a recidivist convicted sex offender, who then is on supervised release. This is not someone who's a member of the public. So I would just note that we're not in the land of strict scrutiny and compelling government interest and all of the jurisprudential elements that go along with a least restrictive means test. There is more of a flexibility here allowed to the court to impose conditions that will achieve the purposes of supervised release in a way that is no greater deprivation than reasonably necessary. With that standard applied, the district court did not abuse its discretion in imposing the conditions that still are essentially at issue, which pertain to defendant's computer use, his use of a mailbox, his employment restrictions, and his residential restrictions. Those conditions, in light of the facts of this case, including defendant's admissions of his computer use since 1997 to look at child pornography and his admission that after his nearly eight years of downplaying child pornography, he was having trouble finding new images that he liked on the Internet. And he actually refined his taste through all this computer use to decide that he liked girls between the ages of 9 and 11. This is not a casual user that we're faced with. This is not a user who is just an episodic consumer of child pornography. This is someone who's acted on his sexual interest in children and should therefore be restricted. Is he a child molester, incidentally? I don't recall. Yes, in the sense that he has a contact, an admitted contact defense. Is this the guy that his previous actual, as opposed to fantasized contact, was when he grabbed some 12 or 13-year-old girl's rear end as she was walking to school? That's correct. That is the nature of his prior. And in addition, he had a problem on pre-trial release staying away from children, even though it was clear that he was restricted during his pre-trial release. How do you do that, incidentally? I always wish they'd stay away from me when I'm on the airplane flying down here, but they don't. There's always someone on the airplane screaming. How do you do that? I think clearly the magistrate judge was sufficiently troubled by Mr. Goddard's conduct that it was clear that he then needed to stay in custody in order to prevent him from doing that. No, I'm not kidding. How do you avoid being near children? You go to Sam's to buy some groceries and odds and ends of detergent and whatnot, and you go to the bathroom, and there's likely to be a kid in there. What do you do? Well, there's the issue of whether the child is supervised or not. In terms of the pre-trial release conditions, clearly Mr. Goddard should not be alone with children. How do you know when you go to the bathroom at Sam's? If a defendant like this becomes aware of the presence of a child, it is best for the protection of the public that he remove himself from that situation if there's no other adult present. I believe I've run over my time, if the Court has no other questions. Counsel? The matter just argued will be submitted.
judges: Hall, Rymer, Kleinfeld